**Donald HORNER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LIQUOR CONTROL BOARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2011.

Decided June 14, 2011.

Jeffrey S. Gross, Philadelphia, for petitioner.

Stephen J. Harlen, Philadelphia, for respondent PA Liquor Control Board.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge McCULLOUGH.

Donald Horner (Claimant) petitions for review of the September 13, 2010, order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying Claimant's petition to review benefit offset (review offset petition). We affirm.

Claimant was employed by the Pennsylvania Liquor Control Board (Employer) since 1974. During this employment, Claimant routinely paid into the pension system administered by the State Employees Retirement System (SERS). Claimant sustained a work-related injury in January, 2003. On January 16, 2003, Employer issued a notice of compensation payable acknowledging the injury and a compensation rate of $675.00 per week based upon an average weekly wage of $1,067.30. Claimant subsequently opted for disability retirement status, and he began receiving a monthly disability pension of $2,906.31. (WCJ's Decision, November 14, 2006 (2006), Findings of Fact Nos. 1–3, 10, 26.)

In April 2005, Employer sent Claimant a notice of pension benefit offset of $1,881.81 per month, or $433.60 per week, thereby reducing Claimant's workers' compensation benefits to $241.40 per week. Claimant filed a review offset petition, and the case proceeded with hearings before the WCJ. Claimant testified that Employer deducted pension contributions from his paychecks throughout the course of his employment. Claimant indicated that he was never informed where his pension money was invested, what type of plan Employer utilized, or the amounts contributed by Employer. (2006 Findings of Fact Nos. 6, 26–29.)

Employer presented the deposition testimony of Linda Miller, Director of SERS Benefits Determination Division. Miller testified that Employer's plan was a defined benefit plan consisting of regular deductions from Claimant's gross salary (originally 5% and later 6.25%), contributions from Employer, and investment income. Miller indicated that Employer's contributions varied over the years and were based on actuarial recommendations. Additionally, Miller explained that Claimant's pension benefit amount is calculated by the following formula: two percent times total years of service, times final average salary, times a class-of-service multiplier, which results in a maximum account value that Claimant receives monthly as a single life annuity. Miller noted that, using this formula, Claimant's monthly pension benefit was calculated at

$2,906.31. (2006 Findings of Fact Nos. 8–10.)

Miller then explained how Employer calculated the offset. Miller noted that Employer began by applying an interest rate of 8.5%, which was based on an actuarial assumption, to Claimant's total contributions. This calculation yielded a figure of $29,969.32, which was subtracted from Claimant's maximum account value of $368,699.14. After an annuity factor was applied, Employer calculated its annual contribution rate to be $22,581.76, or $1,881.81 per month. On cross-examination, Miller acknowledged that she was not an actuary or an accountant. (2006 Findings of Fact Nos. 10–11.)

Employer also presented the deposition testimony of John Wolford, Section Chief for Disability Processing in the Pennsylvania Bureau of Commonwealth Payroll Operations. Wolford testified that his office is responsible for reductions/adjustments to payments to injured employees. Wolford indicated that his office processed Employer's payroll and made the necessary retirement deductions from each employee's gross earnings. (2006 Finding of Fact No. 13.)

Finally, Employer presented the deposition testimony of Brent Mowery, an actuary with Hays Group, a consulting firm that regularly assists SERS. Mowery confirmed that Employer's pension plan was a defined benefit plan, that an individual employee does not have a specific investment account, and that the plan's assets are commingled. Mowery testified that, under this type of plan, an actuarial determination is necessary to ascertain the amount Employer needs to contribute to adequately fund the plan and that these amounts vary from year to year.[1] Mowery explained the formula as follows: first, determine the overall funding requirement for the plan; second, take the employee contributions and attribute an appropriate amount of investment income; and, finally, subtract that result from the present value of the employees' total benefit rights. Mowery noted that this formula resulted in the information in the spreadsheet identified by Wolford. Mowery indicated that a periodic investigation of the actuarial experience supported continued use of an assumed 8.5% investment rate of return, which rate has been adopted by SERS for more than ten years. (2006 Findings of Fact Nos. 18–24.)

In his 2006 decision, the WCJ generally credited the testimony of Miller, Wolford, and Mowery and concluded that Employer was entitled to an offset. However, noting a lack of evidence regarding the investment rates of return prior to 1996 (Mowery testified in 2006 that the 8.5% rate had been used for the past ten years), the WCJ concluded that the amount of the offset could not be determined from the record. Therefore, the WCJ ordered the record on the review offset petition reopened in order for the parties to present additional evidence regarding these rates and the amount of Employer's offset.[2]

Both Claimant and Employer appealed to the Board. The Board agreed with the WCJ and issued an order remanding the matter to the WCJ to reopen the record

1. Mowery testified that he believed Employer's contribution rate to be approximately 17% to 20% of total payroll in the early 1980's, which decreased after 1984 because of favorable investment returns on the monies already in the plan. In some years, these returns even resulted in a 0% contribution rate for Employer. However, Mowery indicated that more recently this rate has risen.

2. The WCJ's 2006 decision also granted two penalty petitions filed by Claimant; however, no issues concerning those petitions are raised in this appeal.

and make necessary credibility determinations, findings of fact, and conclusions of law concerning the amount of Employer's offset.

On remand, Claimant presented the testimony of Nathan Kolbes, a pension actuary. Kolbes testified that neither Miller nor Wolford presented any documentation of the actual contributions Employer made to the pension plan or the time of year such contributions were made. Hence, Kolbes opined that there was no actuarial basis for determining the extent to which Employer funded the pension for purposes of the offset. Kolbes also opined that the method used by Employer to determine Claimant's contributions, which involved estimates because of a lack of information for several years, was not appropriate. Although Kolbes did not dispute Mowery's use of the particular income rate assumption, he indicated that the same did not shed any light on the amounts actually contributed by Employer. Kolbes suggested that additional information was required to determine these amounts, including a profit and loss statement audited by the State Treasurer for the years in question, a copy of the most recent plan document, and a plan audit. (WCJ's Decision, January 30, 2009 (2009), Findings of Fact Nos. 49–53.)

Employer presented additional deposition testimony from Mowery. Mowery reiterated the general offset calculation method used by Employer and discussed above. Mowery acknowledged that the rate of return for the years prior to 1996 would not have been 8.5%. In fact, for the years from 1985 through 1994, Mowery indicated that a single rate of return of 9.0% was applicable and was noted in actuarial valuation reports during that time period. For the years from 1975 to 1984,

Mowery stated that the rate was 5.5%. Mowery testified that application of these rates resulted in an employee contribution figure that was approximately $5,000.00 lower than the applicable figure if an 8.5% rate was used. Mowery further noted that a lower employee contribution figure would translate into a higher Employer contribution figure and, consequently, a greater offset amount. (2009 Findings of Fact Nos. 44–48.)

The WCJ credited Mowery's testimony and rejected Kolbes' testimony as not credible.[3] The WCJ specifically rejected Kolbes' suggestion that Employer was required to present additional information before it could take an offset. Rather, the WCJ indicated that the result in this case was controlled by recent decisions from both our Supreme Court and this Court, including *Department of Public Welfare v. Workers' Compensation Appeal Board (Harvey)*, 605 Pa. 636, 993 A.2d 270 (2010); *Department of Public Welfare v. Workers' Compensation Appeal Board (Cato)*, 911 A.2d 241 (Pa.Cmwlth.2006), *appeal denied*, 593 Pa. 742, 929 A.2d 1163 (2007); and *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225 (Pa.Cmwlth.2006), *appeal denied*, 593 Pa. 743, 929 A.2d 1163 (2007), holding that an employer using a defined benefit plan need not show the actual contributions made to a specific account in order to obtain a pension benefit offset but can rely upon expert actuarial testimony to meet its evidentiary burden. Based upon this line of cases and Mowery's credible testimony, the WCJ denied Claimant's review offset petition. Claimant appealed to the Board, which affirmed the WCJ's decision.

 On appeal to this Court,[4] Claimant argues that the Board erred in affirming

---

3. The WCJ also reaffirmed and incorporated all of his 2006 Findings of Fact.

4. Our scope of review is limited to determining whether findings of fact are supported by

the WCJ's decision because the present case is distinguishable from *Harvey, Hensal,* and *Cato,* the WCJ misinterpreted the holdings in those cases, and the WCJ failed to comply with the Board's remand order which required him to make findings of fact and conclusions of law regarding the calculation of Employer's offset. We disagree.

We begin by noting that benefits paid to members of SERS are governed by the State Employees' Retirement Code (Code),[5] which mandates that both employees and employers contribute to the pension fund. 71 Pa.C.S. §§ 5501, 5507. Section 204 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71, allows employers an offset against workers' compensation benefits for social security, severance, and pension benefits simultaneously received by an employee. The offset for pension benefits is only appropriate to the extent the pension is funded by the employer directly liable for the payment of compensation. *Id.* The regulations of the Bureau of Workers' Compensation further provide that the offset is dollar-for-dollar and is applicable to both defined benefit and defined contribution pension plans.[6] 34 Pa. Code §§ 123.1, 123.8(b).

■■■ The employer bears the burden of establishing entitlement to a pension benefit offset. *Gaughan v. Workers' Compensation Appeal Board (Pennsylvania State Police),* 2 A.3d 785 (Pa.Cmwlth.

2010), *appeal denied,* —— Pa. ——, 17 A.3d 1255 (2011). In order to meet this burden, the employer need not show the actual dollar amounts of its contributions to a defined benefit pension plan; rather, credible actuarial evidence is sufficient to meet the employer's burden of proving the extent to which it funded the plan and to form the basis for the calculation of the pension offset. *Harvey; Gaughan; Hensal; Cato.*

In *Harvey,* the Supreme Court affirmed this Court's decision and held that "the WCJ properly credited the consultant's [actuary's] testimony that the nature of a defined-benefit plan impedes direct tracing and quantification of employer funding, and that actuarial science offers a rational alternative consistent with the nature of this type of plan." *Harvey,* 605 Pa. at 655, 993 A.2d at 282. The Supreme Court further addressed the calculation methodology used by the actuary and SERS, explaining as follows:

> Similarly, acceptance of the calculation methodology—entailing crediting the employee's past contributions, coupled with an actuarially justified rate of return over Claimant's projected life expectancy and attribution of the balance of each pension payment to Employer's past, present, and future contributions— was within the prerogative of the WCJ. Moreover, the [Board] was not free to deviate from the existing Commonwealth Court precedent [*Hensal* and *Cato* ], either in terms of the deferential

substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer),* 894 A.2d 214 (Pa.Cmwlth.2006).

5. 71 Pa.C.S. §§ 5101–5956.

6. The regulations describe a defined benefit plan as a pension plan in which the benefit level is established at the commencement of

the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employee's retirement. 34 Pa.Code § 123.2. This same section describes a defined contribution plan as a pension plan which provides for an individual account for each participant for benefits based solely upon the amount of accumulated contributions and earnings in the participant's account.

review required relative to credibility determinations or the ability of Employer to satisfy its burden using expert testimony.

*Harvey,* 605 Pa. at 655–56, 993 A.2d at 282.

In *Hensal,* this Court addressed the question of how an employer proves the extent to which it funded a defined benefit pension plan in order to qualify for the section 204(a) offset. We noted the following difficulties with respect to this type of plan: a defined benefits plan is funded collectively, with the employer's contributions pooled in a common trust fund from which all participants receive their benefits; the employee receives a set benefit amount based on factors known only at retirement, such as length of employment and retirement age; and the employer is required to contribute funds to the plan to cover the difference in employee contributions and the collective pension liability. *See Hensal,* 911 A.2d at 231–32. Ultimately, we held in *Hensal* that the employer may meet its burden of proving the extent to which it funded the plan through the presentation of expert actuarial testimony. In *Cato,* we simply reaffirmed our holding in *Hensal.*

■ Claimant first contends that the present case is distinguishable from *Harvey, Hensal,* and *Cato* because here there is a lack of underlying factual information that is necessary for an actuary to make a proper actuarial calculation.[7] Although Claimant asserts that this information was present in both *Hensal* and *Cato,* a review of these decisions reveals no reference to such additional information. To the contrary, Miller and Mowery testified on behalf of the employees in each of those cases and their testimony essentially mirrors their testimony in the present case.

Thus, we reject Claimant's assertion that the present case is factually distinguishable from *Harvey, Hensal,* and *Cato.*

Next, Claimant contends that the WCJ misinterpreted the holdings in *Harvey, Hensal,* and *Cato* to mean that Employer did not have to follow the standard of proof set forth in *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King),* 884 A.2d 343 (Pa.Cmwlth.2005). We disagree. In *King,* the employer relied solely on the testimony of Miller, which was essentially the same as Miller's testimony in the present case. We reiterated in *King* that section 204(a) of the Act requires the employer to present evidence establishing the extent to which it funded a defined benefit pension plan, and we held that Miller's testimony alone was insufficient to satisfy the employer's burden. Subsequently, in *Hensal,* we distinguished *King* by noting that, as in the present case, the employer relied on expert actuarial testimony, and we held that such evidence was sufficient to satisfy the employer's burden. Contrary to Claimant's contention, the WCJ's decision does not conflict with *King.*

Finally, Claimant asserts that the WCJ failed to comply with the Board's remand order which required him to make findings of fact and conclusions of law regarding the calculation of Employer's offset. However, the WCJ made all necessary findings of fact and conclusions of law, specifically crediting the testimony of Miller and Mowery explaining how the offset is calculated. Because nearly identical testimony was held to be sufficient to meet the employer's burden of proof in *Harvey, Hensal,* and *Cato,* we reject Claimant's contention.

---

**7.** Claimant's actuary expert, Kolbes, testified that the necessary information included annual plan statements or a plan audit.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 14th day of June, 2011, the order of the Workers' Compensation Appeal Board, dated September 13, 2010, is hereby affirmed.